**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

KEVIN HADLEY                                                                                         PLAINTIFFS

v.                                      Case No. 5:08CV00184 JLH

THE CITY OF PINE BLUFF,
ARKANSAS, et al.                                                                                    DEFENDANTS

**OPINION AND ORDER**

The plaintiff, Kevin Hadley, initiated this action on July 2, 2008, alleging race discrimination in violation of his rights under 42 U.S.C. §§ 1981 and 1983, and seeking relief against the City of Pine Bluff, Mayor Carl Redus, former Chief of Police Daniel Moses, and the members of the Pine Bluff Civil Service Commission. The defendants have filed a motion for summary judgment, and the plaintiff has responded. For the following reasons, the defendants' motion for summary judgment is granted in part and denied in part.

**I.**

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden,

"the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)).  A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences.  *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases).  *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

Kevin Hadley, an African American, was employed with the Pine Bluff Police Department from August of 1995 to December of 2005.  In 1997, Hadley was recognized as the department's officer of the year.  He also received several promotions during his tenure, the most recent being to the rank of sergeant in 2005.  Hadley's career at the department was not spotless, however; in addition to the circumstances that resulted in his termination, Hadley received a fifty-five day suspension in 1998 for using excessive force to arrest a suspect.

In July of 2004, Lieutenant Dana Powell conducted a routine inventory of department-owned weapons and discovered that a .380 caliber handgun that had been issued to Hadley was not on the inventory list.  Powell called Hadley to determine if he still had the gun in his possession. Hadley looked for the weapon, determined he did not have it, and informed Powell that he believed he had returned the weapon to Sergeant Hutchinson.  According to the defendants, Powell asked Hadley to

file a police report regarding the missing handgun. Hadley denies that Powell asked him to file a report about the weapon. Rather, he contends that he asked Powell to contact him if she could not locate the weapon, and when she did not contact him, Hadley assumed that she had located the weapon. Hadley did not file a police report, and on August 9, 2005, the weapon was discovered by members of the department during a drug search.

Also in 2005, an issue arose regarding excessive purchases of gasoline on Hadley's department-issued gas card. During an audit of the department's fuel expenses, it was discovered that over 2,000 gallons of gasoline worth over $2500 had been purchased on Hadley's gas card between January 1, 2005, and July 31, 2005. Many of these purchases were made at times when Hadley was off duty.

In August of 2005, Hadley was questioned by the internal affairs office about the missing weapon and excessive gas purchases. Hadley says that this was the first time he realized the gun was missing or that someone had used his gas card to make unauthorized purchases. Later that day, Hadley confronted his brother Ervin, who lived with Hadley, about the gas card and the gun. Ervin admitted to taking the gas card but denied knowing anything about the gun. Ervin was prosecuted and eventually pled guilty to theft of property and fraudulent use of a credit card.

Initially, Interim Chief of Police Ricky Whitmore placed Hadley on administrative leave with pay. On November 8, 2005, Whitmore placed Hadley on administrative leave without pay and reduced his rank from sergeant to patrolman. On December 7, 2005, Whitmore terminated Hadley's employment altogether. In the termination letter, Whitmore explained that Hadley was terminated for negligence and inattention to control and security of departmental property. Hadley appealed that

termination to the Pine Bluff Civil Service Commission. After a hearing, the commission upheld Hadley's termination.

In his brief, Hadley maintains that Interim Chief Whitmore suspended Officer Tim Waggoner, a Caucasian officer, for an incident similar to that for which Hadley was terminated. Waggoner stored his department-issued firearm in a file cabinet at a car lot that he co-owned with his father. In September 2005, Waggoner's father shot a man named Glenn Lampkin. After Waggoner heard about the shooting, he looked for his firearm, discovered that it was missing from the file cabinet, and filed a police report with the department. Whitmore suspended him for three days without pay for failing to store his weapon properly and because his weapon was used to injure someone. In January 2006, Waggoner's weapon was discovered by police officers during a search of Lampkin's vehicle. According to Deputy Chief Ivan Whitfield, a twenty-six-year employee of the Pine Bluff Police Department, the conduct of Officer Waggoner was much more serious than that of Hadley because Waggoner's gun was used in a shooting.

Hadley also alleges that a number of other Caucasian officers for the Pine Bluff Police Department engaged in inappropriate and even unlawful conduct and were not terminated. In 2005, Officer Jay Miller, a twenty-seven-year-old Caucasian officer, had a sexual relationship with a sixteen-year-old minor whom he met while working in his police uniform as an off-duty security officer. Although Interim Chief Whitmore took part in the investigation, he did not recommend to Chief of Police Daniel Moses that Miller be terminated. Chief Moses suspended Miller for thirty days. In 2006, Shawn House, another Caucasian officer, received a thirty-day suspension from Chief of Police John Howell for threatening to kill an attorney, slashing the tires of a vehicle belonging to an ex-girlfriend's acquaintance, and engaging in other forms of criminal mischief. In 2006, Chief

Howell suspended Erica DeFoor, a Caucasian officer, for filing a false affidavit for an arrest warrant accusing an African-American woman of disorderly conduct. In 2007, Jared Roland, a Caucasian officer, was suspended thirty days for intentionally damaging a vehicle with his keys, which resulted in $1,353.96 in damage, and for lying to cover it up.

### III.

In analyzing the plaintiff's discrimination claim, the Court uses the familiar *McDonnell Douglas* burden-shifting framework. *See Putnam v. Unity Health Sys.*, 348 F.3d 732, 735 n.2 (8th Cir. 2003) (applying *McDonnell Douglas* to a Section 1981 claim); *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003) (applying *McDonnell Douglas* to a section 1983 claim). The plaintiff must first establish a prima facie case of discrimination. To establish a prima facie case of discrimination, the plaintiff must show that (1) he is a member of a protected class, (2) he was meeting his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) (citing *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007)). If the employee establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action, meaning that the presumption of unlawful discrimination disappears. *Carraher*, 503 F.3d at 716 (citing *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007)). If the employer provides such a reason, the plaintiff must then show that the proffered reason is a pretext for the unlawful discrimination. *Id.* Where an employee is unable to show pretext, summary judgment is appropriate. *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir. 1988).

Without contesting the first three elements of a prima facie case, the defendants argue that there are no similarly situated Caucasian employees who were treated differently than the plaintiff. The defendants argue that employees are not similarly situated unless they reported to the same decision-maker and "engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000) (finding that the plaintiff's history of violence and threats rendered her unique from other employees). In other words, the defendants aver that the plaintiff is not "similarly situated in all respects" to any other employee at the Pine Bluff Police Department. *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003) (citing *Clark*, 218 F.3d at 918). The plaintiff, on the other hand, argues that he is similarly situated to the Caucasian officers who committed criminal acts and violated departmental policies and were temporarily suspended rather than terminated because their conduct was similar to that of the plaintiff.

> As the Eighth Circuit has pointed out,
>
> [t]here appear to be conflicting lines of cases in our Circuit regarding the standard for determining whether employees are similarly situated at the prima facie stage of the *McDonnell Douglas* burden-shifting framework. One line sets a "low threshold" for employees to be considered similarly situated, requiring only that the employees "are involved in or accused of the same or similar conduct and are disciplined in different ways." The other line . . . is more rigorous at the prima facie stage and requires that the employees must be "similarly situated in all respects."

*Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851-52 (8th Cir. 2005). In deciding between these two lines of cases, the Eighth Circuit has recognized that the "burden of establishing a prima facie case of disparate treatment is not onerous," and using a more rigorous standard might "conflate the prima facie case with the ultimate issue of discrimination." *Id.* at 852 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981) and *Williams v. Ford*

*Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994)).  As a result, the Eighth Circuit has expressly chosen to follow the low-threshold standard.  *Id.*; *see also Wimbley v. Cashion*, No. 08-2829, 2009 WL 4348276, at *2 (8th Cir. Dec. 3, 2009) (applying the low-threshold standard in light of the Supreme Court's language in *Burdine* and the Eighth Circuit's analysis in *Rodgers*).

Here, the plaintiff has provided evidence that other similarly Caucasian officers in the Pine Bluff Police Department committed offenses similar to or more serious than those committed by the plaintiff and were temporarily suspended rather than terminated for their conduct.  Based on the low-threshold standard articulated by the Eighth Circuit, this is sufficient to establish a prima facie case of race discrimination.

Although the plaintiff has satisfied his initial burden under the *McDonnell-Douglas* framework, the defendants have articulated a legitimate, nondiscriminatory reason for terminating his employment: Hadley failed to properly store his gas card and handgun, and as a result, the card and gun were stolen.  According to Hadley's termination letter, his  "negligence and inattention to the control and security of departmental property show[ed] a lack of responsibility . . . to support the image and the integrity of the Pine Bluff Police Department."  Defs. Exh. C.

The burden returns to Hadley to show that this proffered reason for terminating Hadley was pretextual.  At this stage, the test for determining whether Hadley is similarly situated to any of the Caucasian employees in the Pine Bluff Police Department is rigorous.  *Wimbley*, 2009 WL 4348276, at *3; *Rodgers*, 417 F.3d at 853.  Hadley must show that he and the other officers are similarly situated "in all relevant aspects." *Wimbley*, 2009 WL 4348276, at *3.  "To be probative evidence of pretext, the misconduct of the more leniently disciplined employees must be of comparable seriousness." *Rodgers*, 417 F.3d at 853.

7

Hadley likens his situation to that of Officer Waggoner. Hadley and Waggoner were both officers with the Pine Bluff Police Department, both supervised by Whitmore, both left their handguns in unsecure locations, and both had their guns stolen from those locations. The defendants argue that Hadley and Waggoner are not similarly situated in all relevant aspects because Waggoner filed a police report once he realized his gun was missing, and Hadley did not. They also point out that Hadley left his gas card in an unsafe location where it was stolen and used to purchase over $2,500 worth of gas at the department's expense. Thus, the defendants suggest that Hadley's misconduct was more egregious than that of Waggoner.

The plaintiff disagrees. First, he claims that he was never told to submit a police report regarding his handgun and that he believed Powell had located the weapon since she did not contact him again about it. Second, Hadley offers evidence that Waggoner's offense was more serious than his. Even after the office at Waggoner's car lot was burglarized, Waggoner did not check to see if his handgun, which he kept in a file cabinet in the office, was missing. Waggoner "only began looking for the weapon after [his] father used it to shoot [someone]." Pl. Exh. Q. While Hadley was terminated in part for failing to store his weapon properly, Waggoner was suspended for failing to store his weapon properly *and* because his weapon was used to injure someone.

Based on this evidence, a reasonable jury could find that Whitmore's different treatment of Hadley and Waggoner is evidence that the stated reasons for Hadley's firing were pretextual. Thus, Hadley's race discrimination claims survive summary judgment under *McDonnell Douglas*.

**IV.**

Defendants Carl A. Redus, Jr., Mayor of the City of Pine Bluff, and the members of the Pine Bluff Civil Service Commission—Archie Sanders, Charles Failla, Richard Borgman, Ron Turchi,

and Wanda Neal—argue that they are immune from suit in their individual capacities. "Qualified immunity may protect government officials from liability under 42 U.S.C. 1983, but not if their conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 527 (8th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002)). The test for qualified immunity involves a two-step inquiry: (1) whether the defendants violated a constitutional right and (2) whether that right was clearly established such that a reasonable official would have known that his or her actions were unlawful. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). The United States Supreme Court recently determined that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

In his complaint, Hadley suggests that the mayor and the commissioners failed to promulgate an adequate training program that would eliminate discriminatory practices in the department. To successfully impose liability based on a failure-to-train theory, the plaintiff must demonstrate that the failure to train amounts to "deliberate indifference to the rights of persons with whom the policy come into contact." *Giron v. City of Alexander*, No. 4:07-CV-00568 GTE, 2009 WL 2998946, at *12 (E.D. Ark. Sept. 11, 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). "In a [Section] 1983 case an official 'is only liable for his . . . own misconduct' and is not 'accountable for the misdeeds of [his] agents' under a theory such as respondeat superior or supervisor liability." *Nelson*, 583 F.3d at 534-35 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-49, 173 L. Ed. 2d 868 (2009)). "Liability under Section 1983 requires a

9

causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Here, the plaintiff has not offered any evidence that the mayor or the commissioners deliberately failed to adequately train the police department or violated Hadley's constitutional rights in any other manner. Because there is no evidence that the mayor or commissioners violated Hadley's constitutional rights, Redus, Sanders, Failla, Borgman, Turchi, and Neal are entitled to summary judgment.

## CONCLUSION

Hadley has produced evidence sufficient to raise a genuine issue of material fact as to whether he was subjected to race discrimination when his employment with the Pine Bluff Police Department was terminated. As a result, the City's motion for summary judgment is DENIED. The motion for summary judgment brought by defendants Redus, Sanders, Failla, Borgman, Turchi, and Neal in their individual capacities is GRANTED. Document #21.

IT IS SO ORDERED this 28th day of December, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE